# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IDA GARCIA,** | **CASE NO. 1:19-CV-0381 AWI SAB** |
| **Plaintiff** | **ORDER RE: MOTION TO DISMISS** |
| v. | |
| **BOSTON SCIENTIFIC CORPORATION,** | |
| **Defendant** | |

## I. Background

Plaintiff Ida Garcia suffered from stress urinary incontinence. To address the condition, on August 22, 2011, Plaintiff was implanted with an Obtryx Transobturator Sling System ("Product") made by Defendant Boston Scientific Corporation. After the Product was implanted, Plaintiff experienced severe pelvic pain and other side effects. On April 22, 2016, Plaintiff had the Product removed from her body.

The Product is composed of surgical mesh. Devices made of surgical mesh have been used since the 1950s to treat hernias. Starting in the 1990s, they have been used to treat stress urinary incontinence and pelvic organ prolapse. There have been various warnings over the years that these devices were causing problems in patients. On July 13, 2011, the U.S. Food and Drug Administration issued a safety warning about surgical mesh devices used to treat pelvic organ prolapse. On April 16, 2019, the FDA ordered Defendant and other medical device manufacturers to stop selling the Product and similar devices used to treat stress urinary incontinence and pelvic organ prolapse. Plaintiff alleges that even before 2011, Defendant was aware that the Product was defective and caused injury to those in whom it was implanted.

Plaintiff has filed suit alleging seven causes of action under California law: 1) strict liability manufacturing defect, 2) strict liability failure to warn, 3) strict liability failure to provide adequate warning, 4) breach of implied warranty, 4) breach of express warranty, 6) negligence, and, 7) fraudulent misrepresentation and concealment. Defendant has filed a motion to dismiss, arguing that several of Plaintiff's causes of action fail to state a legal claim. Doc. 7-1. Plaintiff opposes the motion. Doc. 10.

**II. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1145 n. 4 (9th Cir. 2012); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The Ninth Circuit has distilled the following principles from Iqbal and Twombly: (1) to be entitled to the presumption of

truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. Dichter-Mad Family Partners. LLP v. United States, 709 F.3d 749, 761 (9th Cir. 2013). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made." Henry A. v. Willden, 678 F.3d 991, 1005 (9th Cir. 2012). However, leave to amend need not be granted if amendment would be futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities. Mueller v. Aulker, 700 F.3d 1180, 1191 (9th Cir. 2012); Telesaurus VPC. LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

### III. Discussion

**A. Manufacturing Defect – Strict Liability and Negligence**

Defendant argues that Plaintiff has not successfully stated a claim for manufacturing defect under the strict liability and negligence (first and sixth) causes of action. Generally, a "manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." Barker v. Lull Engineering Co., 20 Cal. 3d 413, 429 (Cal. 1978). The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." In re Coordinated Latex Glove Litigation, 99 Cal. App. 4th 594, 613 (Cal. App. 4th Dist. 2002). That is, "the product does not conform to the manufacturer's design." Garrett v. Howmedica Osteonics Corp., 214 Cal. App. 4th 173, 190 (Cal. App. 2nd Dist. 2013). A plaintiff pursuing a manufacturing defect claim must inter alia identify/explain how the product either deviated from the manufacturer's intended result/design or how the product deviated from other seemingly identical models; a bare allegation that the product

had "a manufacturing defect" is an insufficient legal conclusion. <u>Lucas v. City of Visalia</u>, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010).

Defendant asserts "There are no factual allegations as to how plaintiff's particular device purportedly deviated from Boston Scientific's intended result or from other identical unit of the same product line." Doc. 7-1, 4:23-25. Plaintiff responds that the Products differed from Defendant's intended result in the following ways:

> in written product descriptions, product labels, promotional and other materials directed at patients and their physicians, BSC represented that implanting the Product in patients was effective, reliable, safer than alternatives, and involved minimally invasive surgical techniques with few complications. No reasonable manufacturer would intend for its product to deviate so drastically from the purposes for which it was advertised and sold….
>
> The use of polypropylene and collagen in the Product, as compared with other materials, causes adverse immune reactions and injuries.
>
> The mesh material reacts to human tissues and harbors infections.
>
> The use of arms and anchors in the Product, when placed in patients, can injure major nerve routes in the pelvic region.
>
> The Product, as manufactured, is inelastic, and has a propensity to deform, migrate, degrade, and fragment over time, causing chronic pain, inflammation, and other injuries over time.
>
> The product regularly fails to perform its intended purpose (e.g., correcting stress urinary incontinence), often requiring removal and repeated treatment and surgery.

Doc. 10, 13:6-14:6.

In another case concerning a medical device like the Product, allegations that "'defect in their manufacture that caused them to shrink, harden, scarify, oxidize, migrate and had adhesion formation issues thereby causing debilitating and permanent pain to plaintiff's groin and abdominal area'" were insufficient to state a cause of action. <u>Dilley v. C.R. Bard, Inc.</u>, 2014 U.S. Dist. LEXIS 70060, *8 (C.D. Cal. May 21, 2014). Another court found allegations of "(1) failure to properly test the weld strength of the PET polymer rings; (2) failing to put the larger size rings through strength tests; (3) failure to prevent sewing lines from damaging the recoil rings during the manufacturing process; (4) failure to prevent the mesh from shifting during sewing; (5) failure to prevent the weld joint from being placed in an incorrect location; and (6) use of poor design and technique instruction, which could result in physicians damaging the ring with sutures and/or

4

staples during placement" to fail to state a claim. Hill v. Davol Inc., 2016 U.S. Dist. LEXIS 188812, *2-3 (C.D. Cal. Nov. 16, 2016).

Plaintiff points to Tapia v. Davol in which the court found a manufacturing defect claim adequately stated to support her position, but in that case, the plaintiff pointed to "serious problems with the weld process involving the memory recoil ring causing the ring to break during or after implantation." Tapia v. Davol, Inc., 116 F. Supp. 3d 1149, 1157 (S.D. Cal. 2015). The specific manufacturing problem (welding process) was identified. In another case, an allegation that "'1) the method of assembly allowed two metal surfaces to contact each other after implantation; and 2) the modular neck or trunnion was fabricated in such a way that it allowed chromium and cobalt particles to rub off and be released into Plaintiff's hip, causing severe metallosis, most likely from a defect in the composition of the chromium and cobalt that did not comport with design specifications'" did state a claim as "This allegation elucidates the manner in which Plaintiff's Profemur hip implant differed from Defendants' intended design." Schwartz v. Wright Med. Tech., Inc., 2015 U.S. Dist. LEXIS 187133, *7-8 (C.D. Cal. Jan. 27, 2015). The key assertion appears to be the composition of the surfaces which was different than the design specifications.

Plaintiff's allegations are like those of the cases in which a claim was not stated. Defects in the Product are identified but there is no explanation as to how it relates to manufacture. Again, a "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." In re Coordinated Latex Glove Litigation, 99 Cal. App. 4th 594, 613 (Cal. App. 4th Dist. 2002). In another case, the court stated that allegations of a medical device that "the recoil ring had a 'propensity to break and perforate organs'… only suggests that the design of the rings was the problem—perhaps the material chosen for the rings was not strong enough to withstand the pressures it faced—but does not explain what aspect of manufacture made the particular product defective." Jager v. Davol Inc., 2017 U.S. Dist. LEXIS 25873, *13 (C.D. Cal. Feb. 9, 2017). Plaintiff's assertions are similarly phrased to describe problems of design rather than ones related to the physical manufacture of the Product.

Manufacturing defect claims for the first and sixth causes of action are dismissed with leave to amend.

**B. Failure to Warn or Provide Adequate Warning – Strict Liability and Negligence**

Defendant argues the strict liability failure to warn (second) cause of action is really a design defect claim. Doc. 7-1, 5:5-7. The language used for that cause of action is clearly that of design defect: "The subject Product manufactured and supplied by the Defendant contained an unreasonably dangerous defect in design or formulation in that, when it left the hands of the Defendant, an average consumer could not reasonably anticipate the dangerous nature of the Product nor fully appreciate the attendant risk of injury associated with using the Product." Doc. 1, ¶ 71. "California law precludes liability for manufacturers of prescription medical devices under a design defect theory. Eidson v. Medtronic, Inc., 981 F. Supp. 2d 868, 892 (N.D. Cal. 2013), citing Garrett v. Howmedica Osteonics Corp., 214 Cal. App. 4th 173, 182 (Cal. App. 2nd Dist. 2013). Pelvic mesh is a prescription medical device. See Mullins v. Ethicon, Inc., 117 F. Supp. 3d 810, 820 n.12 (S.D. W. Va. 2015). Plaintiff argues that the complaint "has adequately stated a strict liability design defect claim based on a failure to warn theory of liability." Doc. 10, 16:3-5. California law is categorical in not allowing a strict liability design defect cause of action for these types of products. Plaintiff's interpretation is rejected.

Regarding the strict liability and related negligence failure to warn (third and sixth) causes of action, Defendant argues that they should be dismissed pursuant to the learned intermediary doctrine. Under this doctrine, a defendant "is obligated to warn doctors, not patients, of potential side-effects associated with its pharmaceutical products." Motus v. Pfizer Inc., 358 F.3d 659, 661 (9th Cir. 2004). The duty to warn "runs to the physician, not to the patient." Carlin v. Superior Court, 13 Cal. 4th 1104, 1116 (Cal. 1996), Baxter dissent. "The rationale of the foregoing rule is: (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have

no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient." Carmichael v. Reitz, 17 Cal. App. 3d 958, 989 (Cal. App. 2nd Dist. 1971), citations omitted.  The learned intermediary doctrine applies to implanted medical devices. Bigler-Engler v. Breg, Inc., 7 Cal. App. 5th 276, 320 (Cal. App. 4th Dist. 2017).  It covers both strict liability and negligence failure to warn claims. Saavedra v. Eli Lily & Co., 2013 U.S. Dist. LEXIS 173055, *8 (C.D. Cal. Feb. 26, 2013).  An important limitation is that the doctrine "applies only if a manufacturer provided adequate warnings to the intermediary." Stewart v. Union Carbide Corp., 190 Cal. App. 4th 23, 29 (Cal. App. 2nd Dist. 2010) (applying the related sophisticated intermediary doctrine).

Plaintiff points out that she stated in the complaint "The Defendant should have known of this serious risk and warned physicians and patients" and "The Defendant knowingly provided incomplete and insufficient training and information to Plaintiff's physicians regarding the use of the Product and the aftercare of the Plaintiff implanted with the Product." Doc. 1, ¶¶ 40 and 53. This sufficiently alleges that the information Defendant gave to the learned intermediary (physicians) was inadequate.  However, Plaintiff does argue that "these allegations sufficiently identify the inadequacy of BSC's warnings and the representations BSC made to the ***Plaintiff*** and her physicians." Doc. 10, 18:16-18, emphasis added.  In the complaint, Plaintiff does state that "Defendants failed to provide sufficient warnings and instructions that would have put the Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Product." Doc. 1, ¶ 61.  To be clear, Plaintiff's failure to warn causes of action can only be based on the information provided (or not provided) to her physicians.

The second cause of action is dismissed with prejudice.  Plaintiff has stated failure to warn claims for the third and sixth causes of action.

**C. Breach of Implied Warranty**

Defendant argues the breach of implied warranty cause of action must be dismissed because "plaintiff is not in privity with Boston Scientific." Doc. 7-1, 6:26-27.  "Under California

7

law, privity between parties is required for either claim of implied warranty." <u>Coleman v. Bos. Sci. Corp.</u>, 2011 U.S. Dist. LEXIS 42826, *16 (E.D. Cal. Apr. 20, 2011) (discussing merchantability and fitness). In the context of prescription medical devices, the choice of which device to use is driven by the judgment of the physician in a way such that no breach of implied warranty claim can be stated. See <u>Evraets v. Intermedics Intraocular, Inc.</u>, 29 Cal. App. 4th 779, 788 (Cal. App. 2nd Dist. 1994) ("There is no privity between Evraets and respondents. Evraets did not rely on [manufacturer's] judgment that an intraocular device was appropriate for him. Rather, he relied upon his physician's skill or judgment to select or furnish a suitable product. Thus, Evraets cannot sue the manufacturers, suppliers or distributors of the lens on an implied warranty of fitness theory."); <u>Blanco v. Baxter Healthcare Corp.</u>, 158 Cal. App. 4th 1039, 1059, 70 Cal. Rptr. 3d 566, 582 (Cal. App. 4th Dist. 2008) ("there is no evidence Claudia relied on Baxter's judgment that the Valve was appropriate for her. Rather, she relied on her physician's skill and judgment to select the Valve, as evidenced by the fact it was prescribed by a licensed physician."). Plaintiff does not address this argument in her opposition.

The fourth cause of action is dismissed with prejudice.

**D. Fraudulent Misrepresentation and Concealment**

Plaintiff appears to be trying to state claims for intentional misrepresentation and fraudulent concealment. These causes of action are based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. Rule Civ. Proc. 9(b). "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

Defendant argues that Plaintiff has not plead her allegations with enough specificity to meet the Rule 9(b) standard. Plaintiff disagrees and points out that "Specifically, the Complaint alleges that, inter alia, Defendant's written product descriptions, product labels, promotional materials and other materials did not disclose that the Product had a high rate of failure and did not

8

correct the issues for which it was utilized….Defendant failed to conduct adequate studies, failed to provide post-marketing or post-sale warnings, and continued to make material misrepresentations to Plaintiff, her physicians, the medical community, the public, and the FDA concerning the design, manufacture, safety, and efficacy of the Product." Doc. 10, 19:20-20:11. The complaint does not include any more specific description of any communication from Defendant to Plaintiff or her treating physicians.

Plaintiff has not provided sufficient detail to meet the Rule 9(b) standard. A party is required to identify specific omissions and communications that constitute the fraud; general assertions are insufficient. See, e.g Jager v. Davol Inc., 2016 U.S. Dist. LEXIS 188821, *18 (C.D. Cal. Oct. 20, 2016) ("Nothing in the Complaint points to specific content in Defendants' marketing materials, or statements made to Ms. Jager's physician—if any—that were allegedly false"); Hill v. Davol Inc., 2016 U.S. Dist. LEXIS 188812, *26 (C.D. Cal. Nov. 16, 2016) ("although Plaintiff has indicated broadly that he and his physician viewed packaging and written advertisements representing the Ventralex Patch as safe for its intended use, Plaintiff has neither identified a specific advertisement that either he or his physician viewed nor provided even a vague outline of the specific language used to make these representations"). Plaintiff's pleadings appear to be similar to those of another recent case in which the Rule 9(b) standard was not met:

> The FAC fails to allege Coloplast's fraudulent misrepresentations or omissions with particularity. The FAC does not allege the specific content of any alleged misrepresentations or partial disclosures, instead alleging generally that Coloplast represented the Restorelle Y to be safe and effective, while in reality it was not. The FAC also does not allege how the alleged misrepresentations were communicated to Cruz, i.e., when and where the fraudulent statements or incomplete disclosures were made, who within Coloplast made them, and when and where Cruz or her physician received them. The most specific allegation in the FAC regarding the circumstances of Coloplast's alleged misrepresentations is that Cruz and her physician learned that the Restorelle Y was safe and effective 'either through direct promotional contact with Coloplast Sales Representatives, Lab Faculty, through word-of-mouth with other healthcare providers, and/or through promotional materials.' This does not provide the 'who, what, where, when, where, and how' of the fraudulent conduct charged. Therefore, the FAC fails to particularly plead the circumstances of Coloplast's alleged fraud.

Cruz v. Johnson & Johnson, Inc., 2018 U.S. Dist. LEXIS 223415, *7-8 (C.D. Cal. Dec. 10, 2018).

Plaintiff's seventh cause of action is dismissed with leave to amend.

**IV. Order**

Defendant's motion to dismiss is GRANTED in part and DENIED in part. The first cause of action is DISMISSED with leave to amend. The second cause of action is DISMISSED with prejudice. The fourth cause of action is DISMISSED with prejudice. The part of the sixth cause of action based on a manufacturing defect theory is DISMISSED with leave to amend. The seventh cause of action is DISMISSED with leave to amend.

If Plaintiff wishes to amend the first, sixth, and seventh causes of action, she must file an amended complaint by July 15, 2019. If no amended complaint is filed by that time, Defendant must file an answer by August 5, 2019.

IT IS SO ORDERED.

Dated: June 25, 2019

_____
SENIOR DISTRICT JUDGE